## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STANLEY JACOBS,<br><br>                    Plaintiff,<br><br>         v.<br><br>IKONICS CORPORATION, GLENN SANDGREN, WILLIAM C. ULLAND, MARIANNE BOHREN, LOCKWOOD CARLSON, JEFFREY D. ENGBRECHT, ERNEST M. HARPER JR., DARRELL B. LEE, and GREGORY W. JACKSON,<br><br>                    Defendants, | Civil Action No. _____<br><br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff Stanley Jacobs ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.    Plaintiff brings this action against IKONICS Corporation ("IKONICS" or the "Company") and IKONICS' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to TeraWulf Inc. ("TeraWulf").

2.    Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading amended registration statement (the "S-4") to be filed with the Securities and Exchange Commission ("SEC") on September 20, 2021.[1] The S-4

---

[1] The original registration statement was filed with the SEC on July 30, 2021. Amendments to the registration statement were filed on August 2, 2021 and August 11, 2021.

recommends that IKONICS stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby IKONICS is acquired by TeraWulf. The Proposed Transaction was first disclosed on June 25, 2021, when IKONICS and TeraWulf announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which TeraWulf will acquire all of the outstanding shares of common stock of IKONICS for $5.00 per share, one contingent value right, and 1.00 share of the combined company's common stock (the "Merger Consideration"). IKONICS stockholders will own 2% of the combined company. The deal is expected to close in the second half of 2021.

3.     The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning the financial projections prepared by IKONICS management, as well as the financial analyses conducted by Northland Securities, Inc. ("Northland"), IKONICS's financial advisor.

4.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing any further amendment to the S-4 with the SEC or otherwise causing any further amendment to the S-4 to be disseminated to IKONICS's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to IKONICS's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock

of IKONICS.

6.  Defendant IKONICS is a corporation organized and existing under the laws of the State of Minnesota. The Company's principal executive offices are located at 4832 Grand Avenue, Duluth, Minnesota 55807. IKONICS common stock trades on NASDAQ under the ticker symbol "IKNX."

7.  Defendant Glenn Sandgren has been CEO and a director of the Company since 2020.

8.  Defendant William C. Ulland has been a director of the Company since 1972. Defendant Ulland has served as Chairman of the Board since 1976, and served as President and CEO of the Company from 2000 until 2020.

9.  Defendant Marianne Bohren has been a director of the Company since 2016.

10.  Defendant Lockwood Carlson has been a director of the Company since 2009.

11.  Defendant Jeffrey D. Engbrecht has been a director of the Company since 2016.

12.  Defendant Ernest M. Harper Jr. has been a director of the Company since 2012.

13.  Defendant Darrell B. Lee has been a director of the Company since 2012.

14.  Defendant Gregory W. Jackson has been a director of the Company since 2017.

15.  Defendants Sandgren, Ulland, Bohren, Carlson, Engbrecht, Harper, Lee, and Jackson are collectively referred to herein as the "Board" or "Individual Defendants."

16.  Nonparty TeraWulf is a Delaware corporation. TeraWulf is a bitcoin mining company that provides U.S.-produced bitcoin using hydro, nuclear and solar powered cryptomines.

## JURISDICTION AND VENUE

17.  This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

18.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

19.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company and the Proposed Transaction

20.     IKONICS offers products to industrial and consumer customers based on four technology platforms: ultraviolet chemistry, film coating and construction, technical abrasive etching, and industrial inkjet printing. IKONICS products include screen printing emulsions, inkjet films, and products to put patterns and textures onto molds.

21.     On June 25, 2021, the Company entered into the Merger Agreement with TeraWulf. According to the press release issued on June 25, 2021 announcing the Proposed Transaction:

**TeraWulf and IKONICS Announce Merger Agreement, Paving Way For a U.S. Publicly Traded ESG-Focused Cryptocurrency Mining Company with Plans to Use 90%+ Zero-Carbon Energy**

*TeraWulf Positioned to Produce Low-Cost, Domestic, Environmentally Sustainable Bitcoin at an Industrial Scale*

*50 Megawatts ("MW") Expected to be Online This Year and 800 MW Deployed by 2025, Enabling a Hashrate Over 23 exahash per second ("EH/s") of Computational Power*

*Upon Completion of Business Combination, Combined Company Intends to Be Listed on Nasdaq Under Trading Symbol "WULF"*

*IKONICS Shareholders to Receive $5.00 per share and Contingent Value Right ("CVR"), and Collectively Retain 2% of Combined Company's Common Stock*

*IKONICS Business to Become Subsidiary of Combined Company and Positioned for Sale*

**EASTON, Maryland & DULUTH, Minnesota – June 25, 2021** – TeraWulf Inc. ("TeraWulf"), poised to become a best-in-class bitcoin mining company, announced today it expects to become a Nasdaq-listed company through a business combination with IKONICS Corporation (Nasdaq: IKNX), a Duluth, MN imaging technology company. The companies have entered into a definitive merger agreement to combine under a new holding company, which will change its IKONICS to TeraWulf Inc. and is expected to be listed on The Nasdaq Stock Market LLC under the trading symbol "WULF".

**Environmental, Social, and Governance (ESG) Focused Cryptocurrency Mining Company**

TeraWulf is positioned to generate environmentally sustainable bitcoin at an industrial scale in the U.S. using over 90% zero-carbon energy. With 60,000 state-of-the-art miners on order, TeraWulf expects to have 50 MW of mining capacity online this year, and consistent with its buildout plan, expects to have 800 MW mining capacity deployed by 2025, enabling over 23 EH/s of expected hashrate.

TeraWulf is leveraging its management team's decades of experience in energy supply optimization, operations and engineering to create a premier platform for sustainable cryptocurrency mining. In addition, TeraWulf plans to implement its proven model for large cryptocurrency mine development and operations, which will help ensure TeraWulf can scale efficiently. With an institutional commitment to ESG principles and a target of 100% zero-carbon energy utilization, TeraWulf is positioned to be a leading miner of sustainable bitcoin globally.

Paul Prager, Chairman & Chief Executive Officer of TeraWulf, said, "TeraWulf represents an exciting new paradigm for cryptocurrency mining, which is built on a significant strategic advantage to utilize reliable, secure and low-cost sustainable energy sources to support our bitcoin mining activities. We have a talented management team with a proven track record and we are ready to rapidly scale due to an established supply chain and strong partner relationships. Site work is underway at the Company's mining facilities in New York and Pennsylvania with competitive power supply agreements already in place. As we prepare TeraWulf to trade on the public market, we are confident that we have the in-house technology, infrastructure and operations expertise to deliver unparalleled value for shareholders."

Nazar Khan, Chief Operating Officer, added, "Our team's unique access to energy

5

assets and deep sector expertise in the wholesale electricity markets allows us to quickly develop a large-scale cryptocurrency mining platform that can help facilitate and can expedite the electric grid's transition to a zero-carbon future. Sited and managed appropriately, mining operations provide resiliency to the electric grid while leading the rapid development of the global fintech infrastructure."

Glenn Sandgren, Chief Executive Officer of IKONICS, said, "We are pleased to have reached this agreement with TeraWulf and look forward to partnering with them. This transaction provides ideal outcomes for our shareholders, customers and employees. It delivers our shareholders the opportunity to realize a substantial upfront cash payment while continuing to benefit from the value of our legacy imaging business, and provides them with the opportunity to participate in the potential upside of TeraWulf at an exciting time for the cryptocurrency mining space. The agreement will be instrumental in securing the long-term viability of IKONICS's legacy business, allowing it to continue to meet the needs of our customers with a secure supply of our high quality products in addition to continued employment opportunities for our workforce."

**TeraWulf's Leading ESG Focus**

TeraWulf's aim is to be the most environmentally sustainable bitcoin mining company focused on ESG through its purpose-driven business practices, determined clean energy goals, and support for its communities. TeraWulf is committed to diversity, equity and inclusion at all levels of the organization and is proud of its highly qualified, diverse management team. As an industry leading producer of bitcoin with a targeted path of zero-carbon energy utilization, TeraWulf intends to maintain a high level of transparency, reliability, and environmental stewardship across its operations and throughout its supply chain.

Kerri Langlais, TeraWulf's Chief Strategy Officer, said, "Our core focus on ESG sets us apart from our competitors and ties directly to our business success. We are confident that by integrating flexible baseload energy demand into the electric grid, we will accelerate the transition to a more resilient, stable and sustainable energy future while generating attractive investor returns and tangible benefits, including job creation, for our communities."

**Transaction Overview**

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, each outstanding share of IKONICS common stock will receive $5.00 in cash, one CVR, and one share of the combined company's common stock. Through the CVRs, which will not be publicly traded, the IKONICS shareholders will be entitled to received 95% of the net proceeds from any sale of IKONICS's legacy business completed during the 18 months following the closing of the business combination, and will expire at the end of such 18 month period with respect to any portion of IKONICS's legacy business which has not been sold. The shares of the combined company's common stock to

be received by the IKONICS shareholders will collectively represent 2% of the combined company's pro forma common equity ownership. As of March 31, 2021, IKONICS had a net book value of $11.6 million, cash of $4.4 million and working capital of $4.1 million.

Following consummation of the transaction, the legacy business of IKONICS will be operated consistent with past practices but will be positioned for sale on terms that are acceptable to the Board of Directors of the combined company.

The transaction is expected to close in the second half of 2021, subject to the receipt of regulatory approvals, the approval of IKONICS and TeraWulf shareholders, and other customary closing conditions.

**B. The Materially Incomplete and Misleading S-4**

22.     On September 20, 2021, Defendants filed the S-4 with the SEC. The purpose of the S-4 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts*

23.     The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of Northland's fairness opinion, Northland reviewed "certain internal financial projections and estimates relating to IKONICS and TeraWulf furnished to Northland by the respective managements of IKONICS and TeraWulf." Accordingly, the S-4 should have, but failed to, provide certain information in the projections that IKONICS's management provided to the Board and Northland.

24.     With regards to IKONICS, the S-4 fails to disclose any long-term financial projections for the Company or any adequate explanation for the non-disclosure of such

projections.

25.     Notably, with regards to "TeraWulf's Forecasts," the S-4 fails to disclose all line items underlying EBITDA. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning Northland's Financial Analyses

26.     With respect to the *IKONICS Selected Public Companies Analysis,* the S-4 fails to disclose the individual multiples and metrics for the companies identified by Northland in the analysis.

27.     With respect to the *IKONICS Selected Precedent Transactions Analysis*, the S-4 fails to disclose: (i) the value of each transaction used; and (ii) the per share amount paid to the shareholders of the target companies.

28.     With respect to the *TeraWulf Selected Public Companies Analysis,* the S-4 fails to disclose the individual multiples and metrics for each company used by Northland in the analysis.

29.     With respect to the *TeraWulf Discounted Cash Flow Analysis,* the S-4 fails to disclose: (i) the terminal values of TeraWulf; (ii) line items used to calculate free cash flows; and (iii) the inputs and assumptions underlying the discount rates and the perpetuity growth rates.

30.     Without this material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

31.     In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

32.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the

S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

33.     Further, the S-4 indicates that on June 24, 2021, Northland reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view to IKONICS stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Northland's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

34.     Plaintiff is immediately threatened by the wrongs complained of herein and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

### CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Defendants have filed the S-4 with the SEC with the intention of soliciting IKONICS stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

37.     In so doing, Defendants made materially incomplete and misleading statements

and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of IKONICS, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39.     Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; and (ii) the value of IKONICS shares and the financial analyses performed by Northland in support of its fairness opinion.

40.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that Northland reviewed and discussed its financial analyses with the Board on June 24, 2021, and further states that the Board considered Northland's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

41.     The misrepresentations and omissions in the S-4 are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of IKONICS within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of IKONICS and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

11

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

46.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing any further amendment to the S-4 with the SEC or otherwise disseminating any further amendment to the S-4

to IKONICS stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

      B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

      C.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

      D.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

      E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 1, 2021             **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*